UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SHAR LYN FOO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-cv-2033 (TSC) |
| | ) | |
| REX TILLERSON, | ) | |
| Secretary, U.S. Department of State, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION**

Plaintiff Shar Lyn Foo alleges that the State Department and the Foreign Service Grievance Board ("FSGB") violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, when they determined that she was ineligible to seek a waiver for the repayment of retirement annuity overpayments. Plaintiff additionally asserts that the regulation Defendants relied on for their determination, 22 C.F.R. § 17.7(a)(2), is invalid because it is not authorized by, and conflicts with, the text of 22 U.S.C. § 4047(d). The parties have filed cross-motions for summary judgment.[1] (ECF Nos. 15, 18). Upon consideration of the motions and the record, and for the reasons set forth below, the parties' cross-motions are both GRANTED IN PART and DENIED IN PART.

**I.   BACKGROUND**

This case concerns Defendants' attempt to collect on annuity overpayments made to Plaintiff between 1997 and 2011. Shar Lyn Foo is the daughter of Charles Foo, a former Foreign

---

[1] Defendants' motion is styled as a motion to dismiss or in the alternative motion for summary judgment. Because the arguments raised in Defendants' motion are primarily legal and rely upon numerous exhibits, the court will consider the motion only as one for summary judgment.

1

Service officer who died in 1984. (FSGB Corrected Decision ("FSGB Decision") at 3 (Compl. Ex. 2)). Charles Foo received retirement annuity payments from the State Department's Foreign Service Retirement and Disability System until his death in 1984, when his wife Lorna Foo began receiving those benefits as a survivor annuitant. (*Id.*). These annuity payments were deposited directly into Lorna Foo's account at First Hawaiian Bank, and in 1995 Plaintiff was added to this account as a co-owner. (*Id.*; Compl. ¶ 32). After Lorna Foo's death in November 1997, the State Department continued to deposit monthly annuity payments into this bank account until it realized its error and ceased the payments in 2011. (FSGB Decision at 4–5; Compl. ¶ 43). Plaintiff alleges that during the fourteen years, from 1997 to 2011, she was unaware that the monthly deposits were survivor annuity payments that should have ceased with her mother's death; indeed, she was not aware of the source or nature of the payments at all. (Compl. ¶¶ 32–36). Plaintiff states that, as her mother requested, she applied the monthly bank deposits to Lorna Foo's condominium mortgage, and that Lorna had instructed Plaintiff to give the condominium to Plaintiff's nephew when he reached adulthood and the mortgage was paid. (*Id.* ¶¶ 33–38).

In May 2012, the State Department sent Plaintiff a letter informing her that Lorna Foo's survivor annuity account had been overpaid by $254,343.99 and that Plaintiff was required to repay that amount. *(Id.* ¶ 55; Def. Ex. 1). The following month, Plaintiff's counsel sent a letter to the State Department requesting a waiver of the collection under 22 C.F.R. § 17.2 because "[t]he alleged overpayment is not the result of Shar Lyn's acts or omissions and therefore Shar Lyn is without fault." (Def. Ex. 2 at 4; Compl. ¶ 56). Section 17.2(a) provides that "[r]ecovery of an overpayment . . . may be waived pursuant to [22 U.S.C. § 4047(d)] when the individual is without fault and recovery would be against equity and good conscience or administratively

infeasible." Nearly two years later, the State Department responded to Plaintiff's June 2012 letter and notified her that the overpayment amount had been recalculated to $311,703.00 and that it could not consider her waiver request because "[t]he Department is prohibited from waiving collection of an overpayment to an estate under 22 C.F.R. 17.7(a)(2)." (Def. Ex. 3 at 1, 3; Compl. ¶¶ 59–60). 22 C.F.R. § 17.7(a)(2) states that "[w]aiver of an overpayment cannot be granted when . . . [t]he overpayment was made to an estate." Plaintiff subsequently appealed the State Department's determination to the FSGB in July 2014, primarily arguing that she was eligible to seek a waiver because the annuity payments were deposited directly into her own bank account, not sent to an account associated with her mother's estate. (Def. Ex. 5; Compl. ¶¶ 65–80).

The FSGB issued its decision in May 2015, followed by a corrected decision in early June 2015. (Compl. Exs. 1, 2). It found that Plaintiff had failed to proffer substantial evidence that the annuity payments were not made to Lorna Foo's estate and therefore determined that Plaintiff was ineligible for a waiver under 22 C.F.R. § 17.7(a)(2). (*Id.* at 10–17). Plaintiff subsequently brought this suit challenging the FSGB's decision.

## II.    LEGAL STANDARD

On a motion for summary judgment in a suit seeking APA review, the court must set aside any agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2). The court's review is "highly deferential" and begins with a presumption that the agency's actions are valid. *Envtl. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 283 (D.C. Cir. 1981). The court is "not empowered to substitute its judgment for that of the agency," *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), but instead must consider only "whether the agency acted within the scope of its legal authority, whether the

agency has explained its decision, whether the facts on which the agency purports to have relied have some basis in the record, and whether the agency considered the relevant factors." *Fulbright v. McHugh*, 67 F. Supp. 3d 81, 89 (D.D.C. 2014) (quoting *Fund for Animals v. Babbitt*, 903 F. Supp. 96, 105 (D.D.C. 1995)). The plaintiff bears the burden of establishing the invalidity of the agency's action. *Id.*

### III. DISCUSSION

#### A. Ultra Vires Challenge to the State Department's Estate Rule

In Count II of her Complaint, Plaintiff alleges that the State Department acted *ultra vires* and exceeded its authority when it promulgated 22 C.F.R. § 17.7(a)(2), which prohibits the waiver of repayment for an overpayment made to an estate, and further that the FSGB acted *ultra vires* in concluding that the estate rule was valid. (Compl. ¶¶ 98–104). Plaintiff argues that this estate rule is contrary to the text of the enabling statute, 22 U.S.C. § 4047(d), which provides the authority for discretionary waivers of overpayment collections. Defendants contend that the estate rule was lawfully promulgated as a valid and reasonable interpretation of the statute.

The parties agree that in order to evaluate Plaintiff's claim that the estate rule is contrary to the statute, the court must "begin [its] analysis with the first step of the two-part framework announced in *Chevron* . . . and ask whether Congress has 'directly addressed the precise question at issue.'" *Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. 44, 52 (2011) (quoting *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984)). Under step one of *Chevron*, the court first examines "whether the intent of Congress is clear," and if it is then "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842–43. If the statute is "silent or ambiguous," then the analysis proceeds to step two, where "the question for

the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843.

    1.   *Chevron* Step One

The first step of the *Chevron* framework begins with an evaluation of the statute's text using "the traditional tools of statutory construction in order to discern whether Congress has spoken directly to the question at issue." *Eagle Broad. Grp., Ltd. v. FCC*, 563 F.3d 543, 552 (D.C. Cir. 2009) (citing *Chevron*, 467 U.S. at 842–43). The court "looks to the text, structure, and the overall statutory scheme, as well as the problem Congress sought to solve." *Fin. Planning Ass'n v. SEC*, 482 F.3d 481, 487 (D.C. Cir. 2007). "If this 'search for the plain meaning of the statute . . . yields a clear result, then Congress has expressed its intention as to the question, and deference is not appropriate,'" ending the court's analysis. *Eagle Broad. Grp.*, 563 F.3d at 552 (quoting *Bell Atl. Tel. Cos. v. FCC*, 131 F.3d 1044, 1047 (D.C. Cir. 1997)).

The State Department's estate rule was promulgated under 22 U.S.C. § 4047, which provides for annuity payments under the Foreign Service Retirement and Disability System. Section 4047(d) states: "Recovery of overpayments under this part may not be made from an individual when, in the judgment of the Secretary of State, the individual is without fault and recovery would be against equity and good conscience or administratively infeasible." 22 U.S.C. § 4047(d). This section of the statute also provides for payment of the retirement annuity to a survivor annuitant, but states that "no annuity shall be due or payable to his or her estate." 22 U.S.C. § 4047(b). Unlike other terms used in this section, such as "annuitant," Congress did not define "individual." *See* 22 U.S.C. § 4044 (definitions).

Both parties assert that the court's analysis can be resolved at step one. Plaintiff argues that Congress has already addressed the issue of when the State Department may and may not

5

recover an overpayment in the text of 22 U.S.C. § 4047(d).  According to Plaintiff, Congress expressly prohibited recovery of an overpayment only where the individual who received the overpayment is without fault such that recovery would be "against equity and good conscience or administratively infeasible."  22 U.S.C. § 4047(d).  Plaintiff further contends that Congress intended "an individual" to be a broad term meaning *any* individual, because in other provisions of this section and in the preceding section of the statute Congress used specific terms such as "participant," "survivor," "eligible individual," and "individual entitled to an annuity."  22 U.S.C. §§ 4047, 4046.  Defendant argues that the plain text of the statute supports its interpretation because under 22 U.S.C. § 4047(b) the State Department is prohibited from making annuity payments to an estate and therefore payments made to estates cannot be encompassed by the term "an individual" in 22 U.S.C. § 4047(d).

    Neither party's reading of this statutory section satisfies the court that Congress has directly addressed the issue of whether an estate is eligible for an overpayment waiver.  While Plaintiff is correct that Congress did not define the term "an individual," nothing in the statute suggests that Congress intended this term to be so broad as to include *any* individual or entity, including an estate.  A review of dictionary definitions offers no support for Plaintiff's argument.  While Black's Law Dictionary does not define "individual" as a noun, Merriam-Webster defines "individual" as "a particular person" and the Oxford English Dictionary defines it as "[a] single human being as distinct from a group."[2]  However, while it is not clear that Congress intended "an individual" to include estates, the court is also not convinced that the statute's bar on making annuity payments to survivors' estates directly addresses the separate issue of whether an estate

---

[2] *Individual*, Merriam-Webster, https://www.merriam-webster.com/dictionary/individual; *Individual*, Oxford English Dictionary, https://en.oxforddictionaries.com/definition/individual.

may qualify for a waiver if it mistakenly receives an annuity payment.  The prohibition on payments to estates is just one of many statutory restrictions on annuity payments.  By providing for the collection of overpayments generally, as well as the waiver of collection in certain circumstances, Congress clearly envisioned that the State Department might make errors in dispersing annuity payments, and nothing in the statute indicates that Congress specifically intended for all erroneous recipients of overpayments except estates to be eligible for a waiver.

Because Congress assigned no specific definition to the term "an individual," and further expressly provided that an overpayment waiver should be made "in the judgment of the Secretary of State," the court concludes that Congress delegated authority, both explicitly and implicitly, to the agency to answer the question of when recovery of an overpayment "would be against equity and good conscience or administratively infeasible."  This analysis therefore must proceed to step two.

    2.    *Chevron* Step Two

Under step two of the *Chevron* framework, "[i]f Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation.  Such legislative regulations are given controlling weight unless they are . . . manifestly contrary to the statute." *Chevron*, 467 U.S. at 843–44.  If, however, "the legislative delegation to the agency is 'implicit rather than explicit,' [the court] will uphold any 'reasonable interpretation made by the administrator' of the agency." *Eagle Broad Grp.*, 563 F.3d at 551 (quoting *Chevron*, 467 U.S. at 844); *see also Am. Library Ass'n v. FCC*, 406 F.3d 689, 699 (D.C. Cir. 2005) (at step two, "the agency's statutory interpretation is entitled to deference, as long as it is reasonable").  Here, it appears that Congress explicitly granted the State Department authority to determine, using its own discretion, whether a waiver

"would be against equity and good conscience or administratively infeasible", and implicitly granted the agency discretion to interpret the scope of "individual," which the statute left undefined.

Under this deferential standard, the court finds that the State Department's interpretation of "an individual" is reasonable, and thus its rule is permissible and lawful. As stated above, while the statute does not expressly state that estates should not be permitted to keep any annuity payments made in error, it does state that payments may not be made to estates. 22 U.S.C. § 4047(b). When considered in light of the common meaning of "individual" as relating to a person, the State Department's interpretation that this waiver provision should exclude estates appears to the court to be a reasonable one. Moreover, the text of § 4047(d) expressly delegates to the State Department the authority to determine in its discretion when collection of an overpayment is against equity and good conscience. Therefore, the State Department is permitted to conclude that collecting an overpayment from an estate would never be against equity and thus promulgate the estate rule, because such an interpretation is not "manifestly contrary to the statute," *Chevron*, 467 U.S. at 844.

Plaintiff offers several arguments for why the State Department's estate rule is not a reasonable interpretation of the statute. First, Plaintiff points to the Office of Personnel Management ("OPM") agency guidance for 5 U.S.C. § 5584, which applies to overpayments "arising out of an erroneous payment of pay or allowances . . . or arising out of an erroneous payment of travel, transportation or relocation expenses and allowances, to an employee of an agency." OPM's guidance, in the form of a Fact Sheet on its website, provides that "an employee's . . . estate that is liable for repayment of an erroneous payment directed to the employee . . . may also seek a waiver." *Fact Sheet: Waiving Overpayments*, OPM.gov,

https://www.opm.gov/policy-data-oversight/pay-leave/pay-administration/fact-sheets/waiving-overpayments. But the court is not persuaded that OPM's differing interpretation of a similar statute, which applies to government overpayments of salary or reimbursements rather than to retirement annuities, demonstrates that the State Department's interpretation is unreasonable.

Next, Plaintiff cites *King v. OPM*, 730 F.3d 1342 (Fed. Cir. 2013), which involved a waiver request under an analogous overpayments statute to § 4047(d). However, *King* did not involve overpayments to an estate, and therefore it is unclear to the court how it is relevant to the reasonableness of the State Department's rule. Finally, Plaintiff argues that Congress intended the waiver provision to apply broadly, and so a rule against estate waivers would frustrate Congressional intent. In the court's view, Plaintiff's arguments reflect reasonable alternative interpretations that the State Department could have chosen. However, the agency was only required to choose a permissible and reasonable interpretation. Having done so, the State Department did not act *ultra vires* in promulgating the estate rule, and the court finds that the agency's estate rule was promulgated lawfully. The court therefore GRANTS Defendant's motion and DENIES Plaintiff's cross-motion as to Count II.

### B. APA Challenge to Defendants' Application of the Estate Rule

In Count I of her Complaint, Plaintiff alleges that the FSGB violated the APA and acted arbitrarily, capriciously, and contrary to law when it found that Plaintiff was ineligible to request a waiver under 22 U.S.C. § 4047(d) because the overpayments were made to an estate. As noted above, the court's review of agency actions under the APA is "[h]ighly deferential" and "presumes the validity of agency decisions." *Overton Park*, 401 U.S. at 416. Having determined that the State Department's estate rule is valid, the court now considers under this deferential standard whether the FSGB lawfully applied the rule to Plaintiff's appeal.

The State Department's regulations require that the FSGB apply a "substantial evidence" standard of review in considering an appellant's claim. *See* 22 C.F.R. § 17.8(b) ("The recipient of an overpayment must establish by substantial evidence that he or she is eligible for waiver or an adjustment in the recovery schedule."). In its 2015 decision, the FSGB purported to apply this standard and found that Plaintiff "ha[d] failed to carry her burden of showing by substantial evidence that [22 C.F.R. § 17.7(a)(2)] does not apply, and that she is therefore eligible to have her waiver request considered by the Secretary on the merits." (FSGB Decision at 10).

The primary factual dispute that the FSGB sought to resolve was whether the bank account into which the State Department mistakenly deposited monthly annuity payments was a part of Lorna Foo's estate or was instead owned by Plaintiff. In her administrative appeal, Plaintiff argued to the FSGB that she and her mother were co-owners of the account beginning in 1995, and that under Hawaiian law Plaintiff became the owner of the account upon Lorna Foo's death. Therefore, Plaintiff argued, all subsequent annuity payments deposited into the account were given to her, not to her mother's estate. As support, Plaintiff provided the FSGB with four monthly bank statements listing both Plaintiff's and her mother's names on the account, approximately twenty cancelled checks, and a letter from a First Hawaiian Bank Credit Operations Officer stating that "SharLyn Foo was added to her mother's account as a co-owner on November 6, 1995." Plaintiff also cited Haw. Rev. Stat. § 560:6-104(a), which states that "[s]ums remaining on deposit [in a joint account] at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intention at the time the account is created." The FSGB discredited all of Plaintiff's submissions. With respect to the bank statements, it found that "the account statements and checks fail[] to provide any evidence that the account was owned

10

jointly." (FSGB Decision at 11). The FSGB also discredited the bank letter because it concluded that the letter lacked foundation and was not in the form of an affidavit. (*Id.* at 13). The bank letter also stated that Plaintiff and her mother were "co-owners of the account," which the FSGB distinguished without explanation from being "parties to a joint account." (*Id.*).

Ultimately, the FSGB relied heavily on the fact that Plaintiff "believed that the First Hawaiian Bank checking account was in Lorna's name only, and that she (appellant) 'only had signing authority on the account. [She] believed it was her mother's individual account because only Lorna's name appeared on the checks.'" (*Id.* at 10). As a result, the FSGB construed Plaintiff's evidence, including that she was listed on the bank statements, to comport with Plaintiff's own subjective belief about ownership of the account—specifically that she was not an owner but rather only had signing authority for her mother's checks. (*Id.* at 10–11). The FSGB also declined to analyze Haw. Rev. Stat. § 560:6-104(a), the provision cited by Plaintiff, and instead considered only Haw. Rev. Stat. § 560:6-103, which states that a joint account "belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit." Because the FSGB found that there was no evidence that Plaintiff had "made her own independent contributions to the account during Lorna's lifetime," it concluded that Plaintiff was not an owner of a joint account. (FSGB Decision at 12).

While the FSGB's decision must be given deference under APA review, the court finds that it erred in finding that Plaintiff had not put forth substantial evidence that she owned the account into which the State Department made its deposits. Under the evidentiary standard the FSGB was required to apply, Plaintiff had to provide only "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The

test "requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence." *Fla. Mun. Power Agency v. FERC*, 315 F.3d 362, 365–66 (D.C. Cir. 2003) (internal quotation omitted); *see also* 33 Wright & Miller, Fed. Prac. & Proc. Judicial Review § 8333 (1st ed.) ("Substantial evidence is less than a preponderance but enough so that a reasonable mind might find it adequate to support the conclusion."). Here, Plaintiff provided the FSGB with a letter from the bank explaining that she and her mother were "co-owners," and with bank statements that listed both her and her mother on the account. Hawaiian law, as quoted above, provides that when one co-owner of a bank account dies, the surviving co-owner becomes the outright owner. *See* Haw. Rev. Stat. § 560:6-104(a). While Plaintiff may have presented the FSGB with stronger evidence, such as the specific document(s) used to add her to Lorna's account in 1995, or an affidavit instead of a letter from a bank official, Plaintiff was only required to prove her ownership by substantial evidence, not by a preponderance of the evidence. In the court's view, the FSGB erred in determining that Plaintiff had not provided substantial evidence to establish her ownership by placing greater emphasis on Plaintiff's subjective beliefs about her mother's ownership of the account than on the documentary evidence she submitted, and by distinguishing without explanation between a "co-owner" and a "joint owner," and by disregarding without mention or explanation the provision of Hawaiian law, Haw. Rev. Stat. § 560:6-104(a), used by Plaintiff to show that she was the owner of the account.

In sum, the court concludes that the FSGB erred by applying an evidentiary standard higher than the "substantial evidence" standard required under 22 C.F.R. § 17.8(b) and by disregarding Plaintiff's relevant and competent evidence offered to establish that she owned the bank account into which the State Department mistakenly deposited annuity payments. Therefore, the court concludes that the FSGB further erred in determining that these annuity

payments were made to an estate under 22 C.F.R. § 17.7(a)(2).  Because Plaintiff provided substantial evidence that the payments were made to her account, rather than to her mother's estate, then the FSGB should have considered the merits of Plaintiff's waiver request, rather than concluding that the estate rule barred such consideration.  The court GRANTS Plaintiff's cross-motion and DENIES Defendants' motion as to Count I.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion is granted in part and denied in part, and Plaintiff's cross-motion is also granted in part and denied in part.  The court will remand the case to the FSGB for consideration of the merits of Plaintiff's waiver request.  A corresponding Order will issue separately.

Date:  March 23, 2017

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge